**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------- x
In re:                                    :   Chapter 11
                                          :
FIRESTAR DIAMOND, INC., et al.,           :   Case No. 18-10509 (SHL)
                                          :
        Debtors.                          :   (Jointly Administered)
------------------------------------------------------------- x
RICHARD LEVIN, Chapter 11 Trustee of      :
FIRESTAR DIAMOND, INC., FANTASY, INC.,    :
and OLD AJ, INC. f/k/a/ A. JAFFE, INC.,   :
                                          :
        Plaintiff,                        :
                                          :
                                          :   Adv. Proc. No. 19-1102 (SHL)
        v.                                :
                                          :
NIRAV DEEPAK MODI, MIHIR BHANSALI, and    :
AJAY GANDHI,                              :
                                          :
        Defendants.                       :
------------------------------------------------------------- x
```

### MEMORANDUM OF LAW IN SUPPORT OF AJAY GANDHI'S MOTION TO WITHDRAW THE REFERENCE TO THE BANKRUPTCY COURT

Pursuant to 28 U.S.C. § 157(d), Rule 5011 of the Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rule 5011-1, Ajay Gandhi ("Gandhi" or "Defendant"), by and through his undersigned counsel, hereby submits this memorandum of law in support of his motion (the "Motion") for entry of an order withdrawing the reference of the above-captioned Adversary Proceeding currently pending in the United States Bankruptcy Court for the Southern District of New York.  The nucleus of the Liquidating Trustee's Adversary Proceeding consists of Racketeering Influenced Corrupt Organizations Act ("RICO") and related fiduciary duty claims that do not fall within the purview of the Bankruptcy Court's expertise and do not belong in Bankruptcy Court. The Bankruptcy Court is simply not the proper forum for interpretation and adjudication of RICO claims and non-bankruptcy New York state law claims.  Moreover, the

Trustee's central claims in these complex cases constitute non-core claims in which the Bankruptcy Court may not enter final orders or judgments. Further, Gandhi has demanded a jury trial, which the Bankruptcy Court may not conduct given the absence of the express consent of all parties. Withdrawal of the reference of this RICO-centric case serves the interests of efficiency, prevention of forum shopping, and uniformity in the administration of these bankruptcy cases. Accordingly, good cause exists to withdraw the reference.

## RELEVANT BACKGROUND[1]

Firestar Diamond, Inc., Fantasy, Inc., and Old AJ, Inc. f/k/a A. Jaffe, Inc. (collectively, "Firestar" or the "Debtors") were in the diamond and jewelry business. (19-1102, D.E. 28, ¶¶ 6, 8). By way of example, Firestar bought and sold finished jewelry to major retailers such as Costco, JCPenney, Macy's, and Zales. (*Id*. at ¶¶ 300, 301). The Debtors conducted their business internationally, both importing and exporting diamonds and jewelry around the world. (*Id*. at ¶¶ 13-15). The Debtors were ultimately owned and controlled by Nirav Deepak Modi ("Modi"). (*Id*. at ¶ 18). The Debtors also did business, *inter alia*, with various overseas entities owned or controlled by Modi. (*Id*. at ¶ 29). Mihir Bhansali ("Bhansali") served as the sole director and CEO of the Debtor entities. (*Id*. at ¶ 19). Gandhi was employed as the Debtors' chief financial officer. (*Id*. at ¶ 20).

At some point in time, governmental authorities in India began an investigation of Modi and multiple entities he owned and/or controlled. (19-1102, D.E. 28, ¶ 45). On January 29, 2018, Punjab National Bank ("PNB") lodged a criminal complaint with the Indian Central Bureau of

---

[1] Gandhi presents the facts based on the allegation contained in the Adversary Proceedings' complaints and the Report of John J. Carney, Examiner in the main bankruptcy case. Gandhi does so only for purposes of the instant Motion. Accordingly, any statement of "fact" contained herein shall not be deemed admissions by Gandhi, and he hereby reserves the right to present the facts in the light most favorable to him in any further proceedings.

Investigation against Modi, alleging a massive fraud against PNB.  (*Id*. at ¶ 46).  PNB's complaint alleged, *inter alia*, that Modi's entities obtained unauthorized and allegedly fraudulent loans from PNB in India in the form of Letters of Undertaking ("LOU").  (*See id*. at ¶ 51).  Modi's alleged fraud exceeded one billion dollars.  (*Id*. at ¶ 52).

As a result of the PNB complaint, on February 23, 2018, Indian authorities issued an order freezing and authorizing the seizure of Modi's and his affiliates' assets.  (18-10509, DE. 394, p. 13 of 116).  The seized assets included factories which produced most of the fine jewelry sold by the Debtors to their customers.  (*Id*.).  Some of the seized Indian entities also provided the Debtors with certain back office support.  (*Id*.).

The Debtors' sudden loss of their supply chain and back office support had a severe impact on their operations.  (*Id*.).  As a result, on February 26, 2018 (the "Petition Date"), the Debtors filed Chapter 11 Petitions in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").  (19-1102, D.E. 28, ¶ 152).  The Debtors operated their business as debtors in possession from the Petition Date until the Bankruptcy Court entered an order appointing Richard Levin as Chapter 11 trustee on June 14, 2018.  (*See id*. at ¶ 17)

On March 27, 2019, the Trustee commenced the first adversary proceeding (the "First Adversary Proceeding") against Modi, Bhansali, and Gandhi.  *Levin v. Modi et al,* No. 19-01102. On September 20, 2019, the Trustee filed an Amended Complaint in the First Adversary Proceeding (19-01102, D.E. 28).  In the First Adversary Proceeding, the Trustee alleges a claim under RICO and eight other related claims for breach of fiduciary duties and aiding and abetting breach of fiduciary duties.  (19-01102, D.E. 28). The Trustee's RICO claim alleged: (1) mail and wire fraud violations under 18 U.S.C. §§ 1341, 1343; (2) National Stolen Property Act violations under of 18 U.S.C. §§ 2314, 2315; (3) money laundering violations under 18 U.S.C. §§1956 and

1957; (4) obstruction of justice violations under 18 U.S.C. §§ 1503 and 1512, and (5) bankruptcy fraud violations under 18 U.S.C. §152.   On October 15, 2021, the Bankruptcy Court denied Gandhi's motion to dismiss the Amended Complaint in the First Adversary Proceeding.   (19-01102, D.E. 69).   On March 11, 2022, Gandhi answered the First Adversary Proceeding and made a jury trial demand.   (19-01102, D.E. 86).

On February 25, 2020, the Trustee commenced a second adversary proceeding (the "Second Adversary Proceeding") against Bhansali and Gandhi.   In the Second Adversary Proceeding, the Trustee asserts claims for fraudulent transfers under both New York state law and the Bankruptcy Code as well as claims under the Faithless Servant doctrine. (*Levin v. Bhansali, et al,* No. 20-01052).   On May 4, 2020, Gandhi moved to dismiss the Second Adversary Proceeding (20-01052, D.E. 9). Gandhi's motion remains pending.[2]

While two separate Adversary Proceedings exist, the claims at issue arise from a substantially similar set of facts.   Recognizing this, on November 29, 2021, the parties entered into a Stipulated Order which "administratively consolidated [the adversary actions] for purposes of discovery." (19-01102, D.E. 75, ¶ 3). Discovery, however, has not yet commenced in either case, nor has a discovery scheduling order been entered.

## ARGUMENT

## I.    LEGAL STANDARD

The District Court has discretion to determine whether a case should be referred to the Bankruptcy Court.   Under the provisions of 28 U.S.C. § 1334(a), district courts are given original and exclusive jurisdiction of all cases under Title 11 of the United States Code. When a civil

---

[2]     Gandhi will also be filing a motion to withdraw the reference with respect to the Second Adversary Proceeding and respectfully requests that such motion be granted for the reasons set forth herein.

proceeding arises under Title 11, or arises in or relates to a case under Title 11, however, "the

district court [] shall have original but not exclusive jurisdiction."  28 U.S.C. § 1334(b).  Pursuant

to 28 U.S.C. § 157(a), a district court has the discretion to refer to the bankruptcy court "any or all

cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a

case under title 11 . . . ."

Section 157 proceedings are typically classified in one of two ways: "core" or "non-core."[3]

"[C]ore proceedings are those that arise in a bankruptcy case or under Title 11." *Stern v. Marshall*,

564 U.S. 462, 476 (2011). Thus, a core proceeding is one that invokes a substantive right under

Title 11 or could only arise in the context of a bankruptcy case.[4]  *In re MGM Studios,* 459 B.R.

---

[3]        Section 157 (c)(1) provides:

> A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related
> to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of
> fact and conclusions of law to the district court, and any final order or judgment shall be entered by
> the district judge after considering the bankruptcy judge's proposed findings and conclusions and
> after reviewing de novo those matters to which any party has timely and specifically objected.

28 U.S.C. § 157(c)(1).

[4]        Pursuant to Section 157(b):

(2) Core proceedings include, but are not limited to—

> (A) matters concerning the administration of the estate;
>
> (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and
> estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but
> not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims
> against the estate for purposes of distribution in a case under title 11;
>
> (C) counterclaims by the estate against persons filing claims against the estate;
>
> (D) orders in respect to obtaining credit;
>
> (E) orders to turn over property of the estate;
>
> (F) proceedings to determine, avoid, or recover preferences;
>
> (G) motions to terminate, annul, or modify the automatic stay;
>
> (H) proceedings to determine, avoid, or recover fraudulent conveyances;
>
> (I) determinations as to the dischargeability of particular debts;
>
> (J) objections to discharges;

550, 555 (Bankr. S.D.N.Y. 2011).  In contrast, "non-core" proceedings are not "arising in" or "arising under" bankruptcy proceedings, but rather, are merely "related to" bankruptcy proceedings.  *See Lothian Cassidy, LLC v. Lothian Exploration & Dev. II, L.P.,* 487 B.R. 158, 161-62 (S.D.N.Y. 2013).

The Southern District of New York's Amended Standing Order of Reference dated February 1, 2012 (the "Amended Referral Order") automatically refers all cases filed in this District pursuant to Section 157(a) – both core and non-core – to the Bankruptcy Court.

District courts have "broad discretion to withdraw the reference for cause."  *In re Enron Corp.*, 295 B.R. 21, 25 (S.D.N.Y. 2003) (internal citations omitted). Pursuant to 28 U.S.C. § 157(d), the district court may withdraw "in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown."  As detailed below, good cause exists to immediately withdraw the reference for the Adversary Proceedings.

A.     **The *Orion* Test for Withdrawing the Reference**

Courts apply a five-factor test to determine whether to withdraw the reference from the bankruptcy court. *See In re Orion Pictures Corp.,* 4 F.3d 1095, 1101 (2d Cir. 1993), *cert. dismissed*, 511 U.S. 1026 (1994).  Historically, the first factor that courts evaluated was whether

---

(K) determinations of the validity, extent, or priority of liens;

(L) confirmations of plans;

(M) orders approving the use or lease of property, including the use of cash collateral;

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate;

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims; and

(P) recognition of foreign proceedings and other matters under chapter 15 of title 11.

28 U.S.C. § 157(b)(2).

claims at issue were core or non-core under the Bankruptcy Code. *Id*. at 1101. Once a court makes the core/non-core determination, the court then weighs at least four additional factors "[1] efficient use of judicial resources, [2] delay and costs to the parties, [3] uniformity of bankruptcy administration, [4] the prevention of forum shopping, and other related factors." *Id.* at 1101.

"In *Stern v. Marshall*, 564 U.S. 462 (2011), the Supreme Court altered this framework by holding that the constitutional grant of judicial power to Article III courts, not the statutory designation of "core" or "non-core," determines whether a bankruptcy judge may issue a final determination." *In re FKF 3, LLC,* No. 13-CV-3601 (KMK), 2016 WL 4540842, at *6 (S.D.N.Y. Aug. 30, 2016).

Post-*Stern*, "courts in this District have concluded that the relevant inquiry under the first prong of the *Orion* test is ... whether the bankruptcy court has the authority to finally adjudicate the matter." *Roman Catholic Diocese of Rockville Centre v. Certain Underwriters at Lloyds, London*, 634 B.R. 236, 233 (S.D.N.Y. 2021); s*ee also, e.g., In re Jacoby & Meyers-Bankr. LLP*, No. 14-10641 (SCC), 2017 WL 4838388, at *3 (S.D.N.Y. Oct. 25, 2017); *In re FKF 3,* 2016 WL 4540842, at *6 ("The Court ... considers each of the five *Orion* factors, as modified by *Stern* whether the bankruptcy court has final adjudicative authority over the claim; whether the claim is legal or equitable; and considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law."); *In re Arbco Capital Mgmt., LLP*, 479 B.R. 254, 262 (S.D.N.Y. 2012) ("This Court concludes, as have others in this district, that the relevant inquiry under the first prong of the *Orion* test is not whether a matter is core or non-core, but whether the bankruptcy court has the authority to finally adjudicate the matter."); *Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP,* 462 B.R. 457, 467 (S.D.N.Y. 2011) ("[A]fter *Stern,* one can still apply the *Orion* [test] ... not looking at whether the matter can be classified as 'core' under 28

U.S.C. § 157, but rather at whether, under *Stern,* the Bankruptcy Court has the final power to adjudicate it.").

Accordingly, in evaluating the instant Motion, the Court must consider first whether the Bankruptcy Court has the authority to finally adjudicate the Trustee's claims, then address the remaining *Orion* factors.  *Orion*, 4 F.3d at 1101.

## II.     THE *ORION* FACTORS FAVOR WITHDRAWAL OF THE REFERENCE

Withdrawal of the reference is appropriate and warranted after consideration of the *Orion* factors as modified after *Stern*.

### A.     The Bankruptcy Court Lacks Authority to Finally Adjudicate the Trustee's Claims

The Bankruptcy Court lacks authority to finally adjudicate the Trustee's RICO and New York state law breach of fiduciary duty, corporate waste, fraudulent transfer, and faithless servant claims because (1) the claims require the Bankruptcy Court to engage in significant interpretation of non-bankruptcy federal and state law and (2) Gandhi has demanded a jury trial and has not consented to entry of a final judgment by the Bankruptcy Court.

#### 1.     The Trustee's RICO Claim and the Overwhelming Majority of Other Claims are Non-Core.

The Trustee's RICO and New York state law claims would require the Bankruptcy Court to engage in significant interpretation of non-bankruptcy federal and state law.  These claims are also non-core, and therefore not susceptible to final adjudication in the Bankruptcy Court under *Stern*.

Withdrawal of the reference is required where the proceedings would require "a bankruptcy court judge to engage in significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes."  *City of New York v. Exxon Corp.,* 932 F.2d 1020, 1026

(2d Cir. 1991).  As an initial matter, RICO is a federal non-bankruptcy statute, that is, a federal statute falling outside of the Bankruptcy Court's expertise.  *Picard v. Kohn*, No. 11 CIV. 1181 JSR, 2011 WL 10894857, at *3 (S.D.N.Y. Sept. 6, 2011).  Determining whether the Trustee sufficiently alleges proximate causation and the structural elements of a RICO claim also mandates withdrawal of the reference. With respect to proximate causation, "the RICO statute requires that the pattern of racketeering activity or the individual predicate acts impose a *direct injury* on plaintiffs" and thus that "a person is not liable to all those who may have been injured by his conduct, but only to those with respect to whom his acts were a *substantial factor* in the sequence of responsible causation."  *Lerner v. Fleet Bank, N.A.,* 318 F.3d 113, 123 (2d Cir. 2003) (internal citations and quotations omitted) (emphasis added). These RICO issues are precisely the type of issues that need to be addressed in the First Adversary Proceeding. The District Court, not the Bankruptcy Court, will need to interpret and apply RICO and determine whether the Trustee has sufficiently alleged proximate causation and the other elements of RICO as to Gandhi.

The overwhelming majority of the Adversary Proceedings' remaining claims are also non-core claims. As a bankruptcy court cannot finally adjudicate "non-core" claims (*see Stern,* 564 U.S. at 471, 475), this weighs in favor of withdrawing the reference.

Claims for breach of fiduciary duty, including aiding and abetting breach of fiduciary duty, involve private rights and may not be finally adjudicated by the Bankruptcy Court.  *See In re Jacoby & Meyers-Bankr. LLP,* 2017 WL 4838388, at *4; *In re Arbco Cap. Mgmt., LLP,* 479 B.R. at 262 (Chapter 7 trustee's state-law claims for aiding and abetting a fraud, breach of fiduciary duty, breach of contract, and negligence were non-core claims).

In his Second Adversary Proceeding, the Trustee mixes both non-core New York state law claims (fraudulent transfer and faithless servant – Counts 1, 3, 4, and 6) and core bankruptcy claims

(under Bankruptcy Code Section 548 – Counts 2 and 5) against the defendants.  Nevertheless, all these claims arise from the same nucleus of facts as asserted in the First Adversary Proceeding. Under *Stern,* however, the Bankruptcy Court may not enter final judgment on Section 548 fraudulent conveyance claims (Counts 2 and 5), even though these claims are characterized as "core" under 28 U.S.C. § 157(b)(2).  *See, e.g., N.Y. Skyline, Inc. v. Empire State Building Tr. Co.* (*In re N.Y. Skyline, Inc.*), 512 B.R. 159, 177 (S.D.N.Y. 2014) ("Fraudulent conveyance actions 'arise under' section 548 of the Bankruptcy Code and are listed as core in section 157(b)(2), but following *Stern,* courts have held that bankruptcy judges may not enter final judgments in such cases absent the consent of the parties."); *Adelphia Recovery Tr. v. FLP Grp., Inc.,* No. 11-CV-6847 (PAC), 2012 WL 264180, at *4 (S.D.N.Y. Jan. 30, 2012) ("Supreme Court precedents demonstrate that a fraudulent transfer claim involves a private right."), *aff'd,* 601 Fed. Appx. 52 (2d Cir. 2015) (summary order); *see generally Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 55 (1989) (explaining that a "bankruptcy trustee's right to recover a fraudulent [or preferential] conveyance" is "more accurately characterized as a private rather than a public right").

Finally, it is well established that the Bankruptcy Court, as an Article I court, lacks the power to conduct a jury trial on an Article III right without the consent of the parties.  *See In re Arbco Capital Mgmt., LLP,* 479 B.R. at 267.  As such, even if all the claims in the Second Adversary Proceeding's Complaint were core claims – which they are not – the Bankruptcy Court still does not have final adjudicative authority due to Gandhi's jury demand.

As neither Adversary Proceeding can be finally adjudicated by the Bankruptcy Court, the most important *Orion* factor undoubtedly favors withdrawal of the reference.

Accordingly, given that the Bankruptcy Court lacks the constitutional authority to finally adjudicate the Trustee's claims for RICO and New York state law claims, and that Gandhi

exercised his Seventh Amendment right to a jury trial as to those claims and the bankruptcy-specific claims, the reference must be withdrawn as to those claims. *See, e.g., In re: FKF 3,* 2016 WL 4540842, at *19.

### B.  Considerations of Efficiency Favor Withdrawal of the Reference.

Withdrawal of the reference and adjudication of the Trustee's claims in the District Court is the most efficient use of judicial resources.  This is particularly true because any determination of the "non-core" claims by the Bankruptcy Court will require *de novo* review.  *See Stern,* 564 U.S. at 471, 475; *In re Orion Pictures Corp.,* 4 F.3d at 1101.  Moreover, at this early stage in the Adversary Proceedings, the Bankruptcy Court has not yet invested substantial time and resources into the issues beyond the pleadings.  Gandhi just recently answered the First Adversary Complaint in March 2022, after he obtained new counsel and his motion to dismiss was denied. More importantly, the motion to dismiss in the Second Adversary Proceeding is still pending.  The parties agreed to substantively consolidate both cases' discovery for efficiency purposes (19-01102, D.E. 75, ¶ 3), but discovery has not yet commenced.

Litigating the two core bankruptcy claims (Counts 2 and 5 in the Second Adversary Proceeding) in the Bankruptcy Court, while litigating the 13 claims in District Court would result in multiple proceedings and be too wasteful.  Thus, it is most efficient for the Court to withdraw the reference as to all claims. *See, e.g., In re: FKF 3,* 2016 WL 4540842, at *21 ("Many of the fraudulent transfer claims correspond to the same transfers at issue under the breach of fiduciary duty claims, making adjudication of those claims in separate courts inefficient."); *see also, e.g., In re TMST, Inc.*, No. 15-CV-75, 2015 WL 4080077, at *9 (D. Md. July 6, 2015) ("The [d]efendants ... argue that it would be 'unworkable' to split this lawsuit (i.e., to withdraw the reference as to only *some* claims). The [c]ourt agrees, and will not split these proceedings.") (citation omitted));

*In re Corson Mfg.*, No. 00-AP-1366, 2001 WL 877394, at *2 (W.D.N.Y. June 27, 2001) (noting concern that "severing the non-core claims from the core claims would likely result in duplicative presentations on substantially overlapping factual matters and cause unnecessary delay and deplete both judicial resources and the assets of the bankruptcy estate") (internal quotation marks omitted)); *Met-Al, Inc. v. Hansen Storage Co.*, 157 B.R. 993, 1002 (E.D. Wisc. 1993) (noting that "both causes of action ar[o]se out of a common set of facts" and "were to be tried together in bankruptcy court," and concluding "it would be a waste of judicial resources for two separate trials to be conducted in two separate courts"); *cf. In re Chateaugay Corp.*, No. 00-CV-9429, 2002 WL 484950, at *7 (S.D.N.Y. Mar. 29, 2002) ("[C]ourts frequently exercise their discretion to withdraw the reference if the bankruptcy action involves common questions of law and fact with a pending district court action."); *In re Lawrence Grp., Inc.,* 285 B.R. at 789 n.4 (The District Court's *de novo* review of final rulings, which "will delay the resolution of the contractual dispute and, consequently, the final administration of the bankruptcy estate."); *see also In re EMS Fin. Servs., LLC,* 491 B.R. at 205.

Unquestionably, the most efficient use of judicial resources dictates that a single court have a single trial on all the claims at issue.  Under *Stern*, only the withdrawal of the reference of all claims to the District Court can satisfy the judicial efficiency factor.

### C.    Other Factors Favor Withdrawal of the Reference.

In addition to being wasteful and inefficient, trying claims related to the same transactions in different courts risks inconsistent findings.  *In re: FKF 3,* 2016 WL 4540842, at *20; *Dev. Specialists, Inc.*, 462 B.R. at 472 ("To the extent that [the defendant's] case raises issues identical to those that would be raised in the other cases, it would be a waste of judicial resources to allow

the actions to proceed separately.").   Thus, the uniformity factor favors withdrawal of the reference.

"[B]ecause this litigation is at an early stage, withdrawal will not impose unnecessary costs on the parties or delay the proceedings."  *ResCap Liquidating Tr. v. PHH Mortgage Corp.,* 518 B.R. 259, 267 (S.D.N.Y. 2014).  Indeed, the parties anticipate that discovery itself will last at least two years.  Withdrawing the reference will not slow the process or create any additional costs.  If anything, withdrawal will streamline the process.

No evidence exists of forum shopping which would counsel against removal, as seeking a right to a jury trial is not suggestive of forum shopping.  *See, e.g., In re The VWE Grp., Inc.*, 359 B.R. 441, 451 (S.D.N.Y. 2007) ("[W]ithdrawing the reference will not result in forum-shopping because, due to [the] defendants' demand for a jury trial on this non-core claim, the parties have no choice but to try the case in this court."); *see also In re FMI Forwarding Co.*, No. 01-CV-9462, 2004 WL 1348956, at *7 (S.D.N.Y. 2004) (same).

District courts in this Circuit have also considered whether a claim "is legal or equitable" in determining whether to withdraw the reference.  *Orion*, 4 F.3d at 1011.  As the Trustee's claims primarily seek legal, not equitable relief in both Adversary Proceedings, this factor also favors withdrawal of the reference.

As an initial matter, the Trustee's RICO claim clearly sounds in law, not equity. Additionally, while historically breach of fiduciary duty claims were considered to be equitable in nature, *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 567 (1990), where "the plaintiff seeks only to recover funds attributable to plaintiff's loss, not the defendant's unjust gain, the action seeks compensatory damages and is legal in nature."  *In re HHH Choices Health Plan, LLC*, No. 15-11158-MEW, 2019 WL 1409712, at *2 (S.D.N.Y. Mar. 28, 2019) ("[Here, the]

claims for breach of fiduciary duty appear to be legal in nature, not equitable.") (quoting *Soley v. Wasserman*, No. 08 Civ. 9262, 2013 WL 1655989, at *2 (S.D.N.Y. Apr. 17, 2013) and *Pereira v. Farace*, 413 F.3d 330, 340 (2d Cir. 2005)); *In re: FKF 3*, 2016 WL 4540842, at *17 (concluding that claims for breach of fiduciary duty seek a legal remedy).

The Trustee's avoidance claims also seek legal relief. *See In re Lyondell Chem. Co.*, 467 B.R. at 725 ("The Seventh Amendment conveys a guarantee of a jury trial to a party litigating a fraudulent conveyance action when the party has not filed a claim against the bankruptcy estate and the action is not integral to the restructuring of debtor-creditor relations."). As Gandhi has not submitted any claims against the bankruptcy estate, his ability to demand a jury in the District Court has been preserved.

Because the Trustee's claims seek legal, not equitable, relief, and because Gandhi is entitled to a jury trial on all claims, Gandhi's motion to withdraw the reference should be granted.

### D.    Timeliness

Finally, Gandhi timely filed the instant Motion. Whether a motion to withdraw the reference is "timely" filed pursuant to 28 U.S.C. § 157(d) is within the broad of discretion of the District Court. *See Pryor v. Tromba*, 2014 WL 1355623, at *6 (E.D.N.Y. 2014). As there is no specific time limit for applications under 28 U.S.C. § 157(d) to withdraw a reference to the bankruptcy court, District Courts will "assess timeliness in the context of the parties' interactions throughout the course of the litigation in the bankruptcy court." *Id*. (citing *Lone Star Indust., Inc. v. Rankin County Econ. Dev. Dist. (In re New York Trap Rock Corp.)*, 158 B.R. 574, 577 (S.D.N.Y. 1993)). "[C]ourts in this Circuit have defined 'timely' to mean 'as soon as possible after the moving party has notice of the grounds for withdrawing the reference.'" *Official Comm. of Unsecured Creditors of FMI Forwarding Co., Inc. v. Union Transp. Corp. (In re FMI Forwarding*

*Co., Inc.),* No. 04 Civ. 630, 2005 WL 147298, at \*6 (S.D.N.Y. Jan. 24, 2005) (quoting *Kentile Floors, Inc. v. Congoleum Corp. (In re Kentile Floors, Inc.),* No. 95 Civ. 2470, 1995 WL 479512, at \*2 (S.D.N.Y. Aug. 10, 1995)).

Gandhi's motion to withdraw the reference is timely.  After retaining new counsel, Gandhi answered the Amended Complaint in the First Adversary Proceeding just three months ago and demanded a jury trial.  Meanwhile, the Second Adversary Proceeding has not yet been answered, because the motions to dismiss remain pending.  Discovery in the Adversary Proceedings has not yet started, so the Bankruptcy Court has not invested significant judicial resources in adjudicating any issues beyond the pleadings.  *See In re The VWE Group, Inc.,* 359 B.R. 441, 446–47 (S.D.N.Y. 2007) (motion for withdrawal of reference was timely after four months where moving party had already filed motion to dismiss case which was pending).  There has been no delay here, for tactical purposes or otherwise.  Gandhi timely filed this Motion as soon as his new counsel determined that he had appropriate and sufficient grounds to seek such relief.  Because the Motion is timely and meets the *Orion* factors, withdrawal of the reference is appropriate and warranted.

## <u>CONCLUSION</u>

Withdrawal of the reference and transfer of this case to the United States District Court for the Southern District of New York is mandated by Supreme Court precedent.  In addition, the United States Constitution protects Gandhi from final adjudication in a bankruptcy court, and provides for trial by jury in an Article III court. For all the foregoing reasons, Gandhi's Motion to Withdraw the Reference should be granted.

Dated: June 21, 2022
      New York, New York

Respectfully submitted,

**MONTGOMERY MCCRACKEN**
  **WALKER & RHOADS LLP**

By: _/s/ Edward L. Schnitzer_
    Edward L. Schnitzer
    437 Madison Avenue
    New York, NY  10022
    (212) 551-7781
    eschnitzer@mmwr.com

    _Counsel for Ajay Gandhi_